Good morning, your honors. My name is Brad Roach, and I have the pleasure of representing Adam Carrasco. Adam Carrasco is a simple man who was duped into carrying about a quarter of a million dollars across the border from the United States to Mexico. His trial consisted of just a couple of days and relatively few witnesses against him. The government, in their brief, indicates that the evidence against Mr. Carrasco was overwhelming. And I would say that the evidence that, in fact, he did have over $10,000 and he did attempt to go across the border with it is overwhelming. That's not the question. The only question is what knowledge did he have that, in fact, he had that stuff and he had the money. And I'm sorry. I would like to reserve two minutes for rebuttal. And so the knowledge question, I would suggest, that's where there was very, very little evidence. And primarily, the evidence of knowledge came from the government's presentation of an expert witness. And the government's expert witness testified that I think over 1,000 times he had, in an undercover capacity, had actually transported money for, quote, unquote, organizations. Right? So the first question that you have to ask, and I have not been able, in my mind, come up with an effective analogy to this kind of an expert witness, because if you're trying to think from a defense perspective of a counter-expert witness, you can imagine it would be difficult to get a drug dealer to come in and say or a drug organization to come in and testify, yes, I'm an effective drug organization and I use blind mules all the time. Right? So you're starting off with the defendant who is in a necessarily difficult position to support, other than his own testimony, that he did not know that the money was there. So the expert witness comes in and says, testifies that he's done this many, many, many times. And he has personal knowledge. He's talked to other people. And while, again, technically he did not say this never happens, he came as close to it in saying that blind mules do not exist. And he says this without saying those words. He says in his testimony about blind mules, do people carry money without their knowledge across the border? That is not the way you do business, and I have never seen business done that way. He essentially tells the jury that blind mules don't exist. After his trial, before his sentencing, is when the affidavit came out of El Paso indicating that, in fact, blind mules do exist. Now, it's for a drug organization, for the importation of drugs, but these are flip sides of the same course. Import the drugs, export the money. So, in fact, now blind mules do exist, and we know that blind mules do exist because the government has said so, that they exist. So we make our motion for a new trial, and it's our burden, but the question is, is it newly discovered evidence? I don't think there's any question that that's true. It was their due diligence on behalf of myself and my client, and I would suggest there was, because we had no advanced knowledge nor could we have known before this affidavit was made by the FBI that, in fact, the government knows that blind mules exist and are used. Is it material? Yes. This is the crux of the case. It's not cumulative or impeaching, and that, I think, is an important issue because this is the blind mule evidence that, in fact, these organizations do use blind mules, and the way that the Clark affidavit is written, it does not impeach. It further supports, in a way, what Agent Bortfield was saying, was that they needed to do some advanced reconnaissance. They needed to know a lot about the people who were transporting the drugs or the money, and they needed to have a way to make sure that it didn't go away one way or another. In the case involving Mr. Carrasco, all those things also existed. There was advanced reconnaissance by Licenciado, lawyer, as testified to by my client, asked him a lot of questions. There was direct oversight by Licenciado. He came, took the car, put the money in the car, brought it back, and then said, go across the border to my to the mechanic where he can fix it. So he knew exactly from one step to the next where the money was and how it was going to get there. So everything that was described in the Clark affidavit was effectively true in this case. And the question is, and then would that probably result in an acquittal? And what I would suggest to the Court is, in a case where the sole evidence is knowledge, that, yes, in fact, having a government expert come in and say, yeah, in fact, these kind of things do occur in certain situations would result in an acquittal. And the analogy or the case I'd like to refer you to is the Kellington case, which is a 2009 circuit case. It was completely unrelated facts of a civil lawyer who was destroying potential evidence, but the judge prevented him from arguing in closing arguments, the district judge, that he did not have the ethics opinions by the ethics lawyers. So ethics lawyers came in and testified as experts about why he did what he did or explaining that, and the judge said, that's fine, but you cannot argue in closing about the expert. And that was found to be error and it was reversed. And I would submit to you that the same thing is here. If this expert had been available and we'd have known about him, if the district court had said to us, you cannot allow this expert witness to testify or you cannot argue in closing from what he did testify about, that would be error, and I suggest that it was error. Counsel, Judge Gould, if I could ask you a question, please. Yes, sir. Actually, two questions. One is, does the record show us whether appellants' counsel had made an effort to find a blind mule expert witness before the trial? And the second question is, how can you be able to call an FBI agent as your expert if the ‑‑ even once you know about that indictment in the other case, how can you get the government to be your expert witness? Well, first, no. There was no evidence in the record that I attempted to get my own blind mule expert. So ‑‑ and secondly, I understand that the government argued theoretically that he ‑‑ that there's rules about government's experts testifying not for the government. What I would suggest is, similarly, there's no evidence in the record that he would not be permitted to testify. He could. It would just need ‑‑ according to the rules cited by the government, he would just need approval from his supervisor. So we cannot ‑‑ and I would suggest we can't assume that he would not be available to testify because there's no evidence in the record that his supervisor has prevented that. And secondly, even if he did ‑‑ even if he was prevented by his supervisors from testifying for the defendant as an expert, in his affidavit he indicates that the facts that he described are ‑‑ come from his own personal knowledge also. So he could still be called as a fact witness. In fact, so Agent Bortfield says this doesn't happen, that there aren't blind mules, and he can come in and say, well, I personally have seen it happen or I personally know the X, Y, and Z, and so therefore he could come in as a fact witness even if he was prevented from testifying as an expert. Okay. Thank you, counsel. You're just about down to two minutes. You said you wanted to reserve two? Yes. Okay. You can go. I mean, you can use it up now if you want. Your Honor, I will keep the two minutes. Thank you. Thank you. Good morning. May it please the Court. I'm Bob Misko from the U.S. Attorney's Office in Tucson on behalf of the United States in this case. The district court properly rejected the defendant's motion for new trial because of the blind mules. The defendant's testimony was simply, he never, he did not say that blind mules are never used. What he did is he went through the scenario of how difficult it would be to effectively use blind mules. The example he gave would be you'd have to do surveillance to figure out where the vehicles were going so that the traffickers would know the vehicle was pretty certain to go from point A to point B. You would have to, he used the example of steal the car in one location, put whatever you wanted to conceal in it, and then steal it back in the other location. What happened in that Texas case isn't all that different from that, only they used a much more sophisticated scheme. Instead of stealing cars, they had the surveillance using GPS. They went and got duplicate keys made, which arguably is even more difficult than stealing the car probably. And so it wasn't really inconsistent with anything that Agent Bortfeld testified to. So it was merely cumulative, or at best, it could have been used to perhaps impeach Agent Bortfeld. But since Agent Bortfeld has never said, and he doesn't testify that they never used blind mules, it just isn't that material. That may be, but that's not the basis of, what is it, Judge Brewery? Judge Brewery's ruling? Right. He said just the general availability of an expert is not newly discovered evidence. He doesn't make any finding that I can tell dealing with materiality or the similarity of the incidents or that sort of thing, unless I'm overlooking it. Well, Judge, clearly this Court can affirm for any basis, for any basis that appears in the record. But Judge Brewery is also correct that the unavailability of the dependent's to have an expert is not newly discovered. As Judge Gould pointed out, there's no indication the dependent tried to have an expert. There have been experts. But the subject matter that the expert was going to testify to hadn't occurred yet, right? Well, I mean, there is, to the extent the dependent wants to. This guy's trial was in early, late 2010 or early 2011, and this Texas case happened in July of 2011. To the extent the defendant is trying to establish that blind mules are sometimes used, there is, there are experts. There have been experts that testify to that. And as I said, Agent Bortfeldt testifies to that. So there are experts available. There was an expert in the Ninth Circuit case where they affirmed Agent Bortfeldt's testimony in a drug smuggling conviction in a Sepulveda Barraza. There was a retired FBI agent that testified that sometimes blind mules are used, but it's rare. So there are experts there. It's just that the bottom line is the experts wouldn't have helped because they're rebutting something that Agent Bortfeldt doesn't say. He does not say they're never used. He just points out the extreme difficulty that the organization has to go through in using them, and he points out that the availability of people willing to do it for a fee. So in that sense, there is just the Judge Brewery did not abuse his discretion in denying the motion for new trial. Unless the Court has any further questions. I have no questions here. Okay. So thank you, Mr. Roach. Thank you. Mr. Roach, you've got about two minutes left, I believe. Your Honor, I would like to suggest on the not related to the new trial, I did not address directly another part of the appeal that I think is important for Mr. Krosko, which is the admission of what I called other bad acts in my motion, in my appeal, but I really shouldn't even have called it that, other acts that had occurred 12 and 13 years before this, the events that he was indicted about. And those other acts were not crimes. He was never charged nor arrested with them. The government put great sway into those facts, at least in terms of their cross-examination of my client, asked on three separate occasions if, in fact, he had had a substance that was, quote, unquote, secreted behind the horn in his car that he was driving 12 years prior to the arrest, and then six separate occasions asked him if he had a – if his car was seized because it had a compartment that was nonstandard. And the point being that admitting that other act of evidence and putting such primary emphasis on it, as the government did, caused a significant problem for my client and, I believe, led to his conviction. And I just wanted to point out the Rinden Duarte case, 2007, from this Court, was about a guy who was arrested for guns, possession of – felon possession of guns, and he had previously been stopped within a year or two before that in cars that had guns in them that was admitted. The Court found in that case that that was error. It was harmless for other reasons, but it was error. In this case, we have something 12, 13 years before the time of the arrest. And it wasn't even guns. It would be the equivalent of my client being found with a gun case or a holster, not even an actual gun. And so for all those reasons, I would suggest that admission of the – of the other act of evidence was improper also.  Thank you, gentlemen. The case just argued is submitted. Good morning.
judges: Silverman, Gould, Christen